# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>VALENTIN GUIZAR,<br><br>　　　　　Defendant. | No. CR-16-01255-TUC-JAS (DTF)<br><br>**REPORT AND RECOMMENDATION** |

Before the Court is Defendant Guizar's motion to suppress evidence (Docs. 558, 599, and 627).[1] The government filed a response to this motion. (Doc. 585.) These matters came before Magistrate Judge Ferraro for a report and recommendation as a result of a referral, pursuant to LRCrim 5.1. Evidence was heard on November 1, 2017. (Doc. 637.) The Magistrate Judge recommends that the District Court, after its independent review, deny the motion.

## I. <u>FACTUAL BACKGROUND</u>[2]

DEA agents in Tucson received information in June 2015 from a confidential source that Luis Acuna was the Tucson coordinator for a drug trafficking organization (DTO) that shipped cocaine via the United States Postal Service (USPS) from Tucson to North Carolina. The confidential source was one of the individuals used by the Acuna

---

[1] Defendant Adan Alvarez filed the motion to suppress to which Defendant Guizar joined. (Doc. 627.)

[2] The Factual Background is taken from the Government's summary of the wiretap affidavit. (Doc. 585.)

DTO to mail packages of cocaine to North Carolina and had been doing so since March 2014. The confidential source reported that most packages contained either one-half or one kilogram of cocaine and he/she mailed five to six packages per week from March 2014 to June 2015. The confidential source stated that the cocaine was packaged at the defendant's (Adan Alvarez) residence at 481 W. Hammerhead Way and he/she would pick up packages from Acuna's residence at 491 W. Hammerhead Way. Acuna and Adan Alvarez were neighbors at that time. On July 21, 2015, the confidential source provided TFO Moreno with two cocaine packages destined for Charlotte, North Carolina. Agents intercepted the parcels and discovered each contained one-half kilogram of cocaine.

Between July and October 2015, agents obtained toll records and pen registers for phones associated with Acuna and other members of the association. Confidential sources identified Valentin Guizar as a co-conspirator who mailed cocaine-laden packages to North Carolina as well as coordinating and collecting laundered drug proceeds. Once the cocaine was received in North Carolina, individuals there would deposit money into bank accounts at Bank of America and Wells Fargo belonging to co-conspirators in Tucson. The money then would be withdrawn in Tucson and delivered to Guizar or Acuna for export into Mexico. Confidential sources provided agents with Guizar's telephone number, (520) 912-0106 (herein referred to as Target Telephone #1 or TT1). On October 1, 2015, an undercover agent purchased one (1) ounce of cocaine from Guizar.

After that incident, agents continued to employ investigative techniques to identify and cease the DTO's operations but they proved unsuccessful. Task force officer (TFO) Moreno authored an affidavit and application to wiretap TT1. On November 16, 2015, TFO Moreno obtained an order from Senior United States District Court Judge David C. Bury to monitor wire and electronic communications from TT1. The stated goals of the investigation were, as follows:

    a.    Gathering of evidence leading to the identification, indictment, and conviction of members of the ACUNA DTO, including but not limited to the identities and roles of accomplices, aiders and abettors, co-conspirators and

participants in their illegal activities, including without limitation sources of supply, customers, financiers, transporters, dealers, money couriers, and stash house operators for the controlled substances operating in the U.S. and other foreign nations;

  b. Identification of the various methods employed by the ACUNA DTO to facilitate its drug distribution, including without limitation identification of the dates, times and places of the commission of ongoing drug distribution activities of the Target Subjects and others yet unknown;

  c. Identification of all locations and items being used by the ACUNA DTO in furtherance of its drug distribution activities, including without limitation those used to conceal, store, prepare and distribute the controlled substances;

  d. Identification of all locations and methods used by the ACUNA DTO to conceal its drug-related proceeds and/or assets, including the existence and location of records of narcotics trafficking and money laundering activities and the location and disposition of the proceeds from those activities; and

  e. Identification of the transportation routes, methods of transportation and distribution, and geographic scope of the ACUNA DTO used to transport controlled substances to and from the District of Arizona and to other locations in the U.S. and other foreign nations.

  f. Disrupt and dismantle the ACUNA DTO.

(Doc. 558-1 at pp. 7-8.) Wire and electronic intercepts over TT1 began on November 16, 2015 and ceased on December 16, 2015.

## II. DISCUSSION

Defendant Guizar moved to suppress all evidence derived from the court authorized intercepts over TT1 solely on the ground that law enforcement officers lacked necessity required to obtain the intercepts. The defendant also asserted TFO Moreno made a false statement in her affidavit and either deliberately or recklessly omitted material information that would have obviated the necessity for the intercept. The

defendant requested a *Franks* hearing where he could demonstrate the falsity and the materiality of the omissions.

As correctly pointed out by the Government, the inquiry begins with the presumption that the affidavit is valid. *United States v. Meeks*, 366 F.3d 705, 716 (9th Cir. 2004) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). "In order to receive a *Franks* hearing, the defendant must make a non-conclusory and 'substantial preliminary showing that the affidavit contained actual falsity, and that the falsity either was deliberate or resulted from reckless disregard for the truth.'" *United States v. Prime*, 431 F.3d 1147, 1151, n.1 (9th Cir. 2005); *see also United States v. Meling*, 47 F.3d 1546, 1553 (9th Cir. 1995) (extending analysis applied to false inclusions to omissions). However, the law does not require clear proof of deliberate or reckless omissions or misrepresentations at the pleading stage. *See United States v. Stanert*, 762 F.2d 775, 781(9th Cir. 1985). The defense need only make a substantial showing that supports a finding of intent or recklessness to obtain a hearing. *See United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1111 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006).

At the hearing, defense counsel narrowed the focus of the alleged falsity and alleged omissions to the necessity element. The alleged falsity was also narrowed to a single paragraph in the affidavit. The defendant argued paragraph 35 of TFO Moreno's affidavit was actually false regarding the bank accounts for CS1.

> 35. From March 2014 to June 2015 and prior to working with law enforcement, CS1 and CS5 had used their funnel accounts as described above to launder approximately $500,000 in United States Currency (USD) for ACUNA. The bank accounts CS1 used to funnel money for ACUNA have since been closed by the banking institutions. . . .

(Doc. 585-1 at p. 18, ¶ 35.) Defendant argues that this paragraph was demonstratively false given TFO Moreno's Grand Jury testimony. TFO Moreno testified that CS1 had two other accounts at Wells Fargo and told the Grand Jury that $131,000 had been funneled in CS1's Wells Fargo accounts between September 2014 and February 2015. Defendant

reasons that had this additional information been included in TFO Moreno's affidavit it would have demonstrated there was a lack of necessity, because the accounts were still available for continued investigation.

At the hearing, the defendant also narrowed the alleged material omission to TFO Moreno's failure to include details about postal inspectors' assistance in tracking the drug packages and money. The defense points out that before the Grand Jury on June 22, 2016, TFO Moreno testified:

> Q So before we talk about November 2015, specifically, were you aided in the investigation by United States Postal inspectors?
>
> A Yes.
>
> Q And what's some of the information they were able to provide to you in terms of Valentin Guizar and some packages mailed by him?
>
> A They were able to get video, photographs, still images of Valentin Guizar mailing the parcels to the various addresses in Charlotte, North Carolina, and also give us copies of the parcel that was actually being mailed.
>
> Q And from here in some of the pictures, does it appear to be the same handwriting?
>
> A Yes.
>
> Q And these are all packages being mailed at various post offices in Tucson but all going to addresses in Charlotte, North Carolina?
>
> A Yes.
>
> Q. And information is that approximately 29 parcels were sent specifically by Guizar between August of 2015 and April of 2016.

The defendant argues that had this delivery and the other deliveries described in the government's discovery been included in TFO Moreno's affidavit it would have demonstrated there was no necessity for the intercept. The defendant contends this information was either deliberately or recklessly omitted.

While the defendant has shown a possible misstatement and that other facts were omitted, he must also to demonstrate that the falsity or omission was material. *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002). Even where officials either lied or made reckless misstatements in the affidavit, as a general rule, does not necessarily invalidate the warrant, "[b]ut false statements that are material in causing the warrant to issue will invalidate it." *United States v. Rivera*, 527 F.3d 891, 898 (9th Cir. 2008) (quoting *United States v. Ippolito*, 774 F.2d 1482, 1485 (9th Cir. 1985)). A false statement or omission is not material unless the affidavit, purged of its defects, would not be sufficient to support a finding of probable cause or necessity. *Meling*, 47 F.3d at 1553.

As more particularly described below, the Court finds the statement and the omissions above were not material to the issuance of the intercept. Even without the alleged misstatement and including the alleged omissions, the government established necessity. Therefore, the defendant's request for a *Franks* hearing is denied.

Additionally, the defendant has failed to make a substantial showing that supports a finding of intent or recklessness. *United States v. Gonzalez, Inc.*, 412 F.3d at 1111. The defendant simply reasons that the failure to include the information is evidence of intent. The Court disagrees.

Defendant also challenges the wiretap based upon a general claim that the government failed to exhaust ordinary investigative methods. To establish that a wiretap is necessary, the application must set forth "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). The issuing judge must then determine whether "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id*. § 2518(3)(c); *United States v. Commito*, 918 F.2d 95, 98 (9th Cir.1990); *see also United States v. Bennett*, 219 F.3d 117, 1121 (9th Cir. 2000); *United States v. Rivera*, 527 F.3d at 897 ("To obtain a wiretap, the government must overcome the statutory presumption against this intrusive investigative method by proving

necessity."); *United States v. Garcia-Villalba*, 585 F.3d 1223, 1228 (9th Cir. 2009)("The necessity requirement can be satisfied by showing in the application that ordinary investigative procedures, employed in good faith, would likely be ineffective in the particular case.") (Internal quotations and citation omitted.)

The defendant submitted the affidavit of Donald J. Bertsch, a retired Tucson Police Department detective, as evidence that the affidavit lacked necessity. In the affidavit Mr. Bertsch generally described his background and experience in wiretaps and narcotics investigations. Mr. Bertsch reviewed the affidavit and concluded that the government had given up too soon on the ordinary investigative techniques. Mr. Bertsch acknowledged that the efforts described in the affidavit had not yet produced the desired results for the investigators, but generally postulates they should have done more. For example, Mr. Bertsch notes,

> Prior to applying for the wiretap on Mr. Guizar's phone, agents only conducted site checks on a mere five occasions. These checks mostly focused on the Hammerhead addresses. They did check Mr. Guizar's home twice. The last site check was performed at Mr. Acuna's residence on October 9, 2015.

(Doc. 638, Ex. 1. at p. 2.) Absent from Mr. Bertsch's affidavit is any explanation why the investigative techniques that had been tried and failed would have produced results if they were repeated. "[L]aw enforcement officials need not exhaust every conceivable alternative before obtaining a wiretap." *Garcia-Villalba*, 585 F.3d at 1227; *Bennett*, 219 F.3d at 1122. (Mere attainment of some degree of success during law enforcement's use of traditional investigative methods does not alone serve to extinguish the need for a wiretap.)

Mr. Bertsch's affidavit also fails to explain how the traditional investigative methods he advocated would likely achieve the investigative goals, which included the dismantling of a large international drug smuggling conspiracy. "The government is entitled to more leeway in its investigative methods when it pursues a conspiracy." *Garcia-Villalba*, 585 F.3d 1230; *see also United States v. Canales Gomez,* 358 F.3d

1221, 1226 (9th Cir. 2004) (noting that conspiracies present unique law enforcement problems and traditional investigative techniques may not lead to satellite conspirators).

When evaluating the affidavit as a whole, TFO Moreno's affidavit is a full and complete statement of specific allegations indicating why normal investigative procedure failed or would have failed. *United States v. Blackmon*, 273 F.3d 1204, 1207 (9th Cir. 2001). The defendant has failed to show that the presumptively valid wiretap order lacked the element of necessity. *Meeks*, 366 F.3d at 716.

### III. RECOMMENDATION

Accordingly, it is recommended that, after its independent review of the record, the District Court **deny** Defendant's motion to suppress. (Docs. 558, 599 and 627.)

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of this Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived.

Dated this 7th day of November, 2017.

D. Thomas Ferraro
United States Magistrate Judge